United States Court of Appeals,

Fifth Circuit.

No. 96-60199.

In The Matter of BILOXI PRESTRESS CONCRETE, INC., Debtor,

W.C. FORE TRUCKING CO., INC., Appellant,

v.

BILOXI PRESTRESS CONCRETE, INC., Appellee.

Oct. 28, 1996.

Appeal from the United States District Court for the Southern District of Mississippi.

Before REYNALDO G. GARZA, JOLLY and DeMOSS, Circuit Judges.

PER CURIAM:

This case presents the question whether an unsecured debt, assigned for purposes of collection only to an assignee holding a secured debt arising from the same transaction, may, by virtue of that assignment, become a secured debt of such assignee. After reviewing the record, studying the briefs and considering the arguments presented to this court, we have concluded that the district court correctly affirmed the bankruptcy court's conclusion that the unsecured debt remained unsecured following the assignment.

The bankruptcy court issued a thorough and well-reasoned opinion that sets out the correct analysis in this case. We therefore attach the bankruptcy court opinion as Appendix "A" and adopt that opinion as the opinion of this court.

AFFIRMED.

APPENDIX A

IN THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN
DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

In re Biloxi Prestress Concrete, Inc.

Biloxi Prestress Concrete, Inc., Plaintiff

1

v.

W.C. Fore Trucking, Inc., Defendant

No. 9109988 SEG

Adversary No. 930823 SC

*OPINION*

EDWARD R. GAINES, Bankruptcy Judge.

The matter before the Court is the complaint filed by the debtor to determine the secured status, to recover or set aside preferential transfers and to object to the proof of claim W.C. Fore Trucking, Inc. This opinion is restricted to the issue of the secured status of W.C. Fore Trucking, Inc. Having considered the pleadings, the memoranda submitted by counsel, and the trial testimony, the Court is of the opinion that the claim of W.C. Fore Trucking, Inc. is unsecured.

*I. FACTS*

1. Biloxi Prestress Concrete, Inc., the debtor herein, filed a petition for relief under Chapter 11 of Title II of the United States Code on November 8, 1991.

2. On February 1, 1993 the debtor filed this adversary complaint against W.C. Fore Trucking, Inc. pursuant to sections 503, 506 and 547(b) to determine secured status and to recover or set aside preferential transfers and objection to proof of claim.

3. Briefs were subsequently submitted to the Court by the parties and the matter was set for trial.

4. A stipulation of facts was entered into and submitted to the Court prior to trial which included the following stipulations:[1]

(a) Immediately prior to April 1, 1991, Biloxi Prestress Concrete, Inc. was indebted to W.C. Fore Trucking Co., Inc. in the amount of $360,838.91.

(b) Immediately prior to April 1, 1991, Biloxi Prestress Concrete, Inc. was indebted to Coast

---

[1]Numbering here is not exactly as it appears in the submitted stipulation. Additionally, references to attached exhibits are omitted.

Materials Co. in the amount of $624,334.36.

(c) W.C. Fore is a principal officer, director and stockholder in both W.C. Fore Trucking Co., Inc. and Coast Materials Co.

(d) Prior to April 1, 1991, W.C. Fore advised management at Biloxi Prestress Concrete, Inc. that neither Coast Materials Co. nor W.C. Fore Trucking, Inc. would provide concrete products or transportation to Biloxi Prestress unless they were assured of payment for same in the future.

(e) At the time the demand was made by W.C. Fore, the Sovran Bank/Tennessee (now known as the NationsBank of Tennessee) had a first lien on all the Debtor's assets including by way of illustration but not limitation inventory and accounts receivable.

(f) On or about April 24, 1991, the Debtor entered into a security agreement which was executed by Fore, Coast and the Debtor. UCC financing statements were filed by Coast with the Secretary of State and the Chancery Clerk of the Second Judicial District of Harrison County, Mississippi on July 12, 1991.

(g) The NationsBank was not a signatory to the initial agreement.

(h) Later, on or about August 31, 1991, after modifying some of the terminology in the original security agreement the NationsBank executed the agreement.

(i) The security agreement, the UCC financing statements and the assignment from Fore to Coast are the documents upon which Coast and Fore base their claims that Coast is a secured party herein. Fore admits that it does not hold a secured claim.

(j) Fore did not file UCC financing statements with either the Secretary of State of the State of Mississippi or the Chancery Clerk of the Second Judicial District of Harrison County, Mississippi.

(k) The Coast amended proof of claim includes the claims of Fore.

(*l* ) Prior to the filing of the original petition here, Coast had never attempted to collect any of Fore's accounts receivable owed by Biloxi Prestress Concrete.

(m) Prior to the filing of the original petition for relief by the Debtor on November 8, 1993 [sic], the Debtor had treated the claims of Coast and Fore separately and had itemized them

3

separately on invoices to Biloxi's customers.

(n) Title to the receivables has not been transferred to Coast. Fore continues to claim the receivables as its property and such are carried on the books of Fore as its assets. The Biloxi receivables were assigned by Fore to Coast for the purposes of collection only.

(*o*) Coast has not paid Fore for the assignment of any of the Fore accounts nor has it assumed the indebtedness owed by the Debtor to Fore. Such was not assigned to Coast for the purposes of securing any transaction between Coast and Fore. Said assignment was for collection purposes only and Coast claims no ownership position in same.

(p) Under the provisions of the assignment, Coast is merely acting as the collection agent for Fore.

(q) Coast does not carry the Fore accounts on its books or records and does not claim sodify the terms of the agreement.

5. On July 2, 1992, a proof of claim was filed by W.C. Fore Trucking, Inc. in the amount of $534,541.00 which asserted a secured claim.

6. On February 11, 1993, subsequent to the filing on February 1, 1993, of the debtor's complaint to determine secured status and objection to claim of W.C. Fore Trucking, Coast Materials amended its proof of claim to include the claims of Fore as part of its claim.

7. Subsequent to the presentation of evidence, the parties requested that the Court hold its ruling in abeyance due to renewed settlement discussions. Subsequently the parties notified the Court that no settlement had been reached. Supplemental briefs were submitted by the parties to summarize their prospective positions and the matter was submitted to the Court for resolution.

## II. CONCLUSIONS

The matter before the Court is a core proceeding under 28 U.S.C. § 157. The Court has jurisdiction pursuant to 28 U.S.C. § 1334.

The only issue submitted to the Court is whether or not the perfected security interest of Coast Materials attaches to the debts owed by the debtor to W.C. Fore Trucking, Inc. for

transportation charges.  The debtor does not contest the validity of the security interest of Coast Materials as to debts owed to Coast Materials by the debtor.  Additionally, the Court has previously sustained the debtor's objection to the proof of claim of W.C. Fore as to secured status based on W.C. Fore's stipulation that it does not have an independent security interest.

The security agreement in issue granted a purchase money security interest to Coast as follows:

> BILOXI PRESTRESS CONCRETE, INC., a Mississippi business corporation, hereinafter called "Biloxi", ... hereby grants to COAST MATERIALS CO., hereinafter called "Coast", a security interest in Debtor's inventory containing materials furnished by Coast on or after April 1, 1991, whether now owned or hereafter acquired, and any and all products and proceeds thereof, herein called "Collateral", subject to the terms and conditions stated herein.  The security interest granted is a purchase money security interest.

Security Agreement at p. 1.  The agreement further provides the following:

Debtor desires to purchase, on open account from Coast and from W.C. Fore Trucking, Inc., ("Fore"), concrete, and the transportation of finished goods which contain the products furnished by Coast.  Such purchases and transportation charges shall be secured hereby.  The parties hereto agree that this Security Agreement APPENDIX A—Continued
is effective as of April 1, 1991.  The obligations secured by this Agreement are concrete and transportation charges incurred by the Debtor on or after April 1, 1991.  No concrete or transportation charges incurred by the Debtor prior to April 1, 1991, will be secured hereby.  No interest owed by the Debtor to Coast or Fore will be secured hereunder.

Security Agreement at p. 1.  The agreement clearly indicates an intent that transportation charges were to be secured, as conceded in the debtor's brief.[2]

The debtor argues that Fore's claims are unsecured and are subordinate to the estate based on Miss.Code Ann. § 75-9-301(1)(b) which provides that an unperfected security interest is subordinate to a person who becomes a lien creditor before the security interest is perfected, and Section 544(a)(1)[3] of the Bankruptcy Code which gives the trustee the rights and powers of a lien creditor.

---

[2]Issues raised in the briefs regarding whether the security interest of Fore attached and was enforceable and whether the collateral description was sufficient pursuant to Miss.Code Ann. § 75-9-203 (Supp.1994) need not be determined here.  Fore has stipulated to the Court that it does not hold a secured claim.

[3]This section is made applicable to a debtor in possession under 11 U.S.C. § 1107.

Although it is admitted by Fore that it filed no UCC financing statements, Fore and Coast present the argument that Coast Materials is the holder of a secured claim for all material *and* transportation charges at issue. The following argument is made in the brief submitted to the Court:

> The issue is not whether Fore was vested with a security interest under the parties' documents. That was not necessary, because Coast was so vested. The Debtor has not contested the agreement in so far as it relates to Coast.

> The parties' transaction was structured so that Coast was granted a lien in Biloxi Prestress' inventory and finished product for concrete *and* transportation charges related to the product. The receivables otherwise due for transportation charges were assigned and vested in Coast ...

Original Brief of Coast Materials Company and W.C. Fore Trucking Company Inc. at p. 6.

The assignment of receivables from W.C. Fore Trucking to Coast Materials states as follows: "W.C. Fore Trucking, Inc., hereby assigns to Coast Materials Co. all accounts receivable which are affected by the Security Agreement effective April 1, 1991, for purposes of collection". No date was contained in the assignment.

Fore and Coast argue that Article 9, requiring filing of UCC financing statements, is not applicable to the transactions here because the assignment was made for collection purposes only. Fore cites the pertinent section of the Uniform Commercial Code as follows:

§ 75-9-104. Transactions excluded from chapter.

This Chapter does not apply

(f) to a sale of accounts or chattel paper as part of a sale of the business out of which they arose, or an assignment of accounts or chattel paper which is for the purpose of collection only .....

Miss.Code Ann. § 75-9-104 (1972).

It is clear from the wording of this statute cited to the Court that Article 9 does not apply to assignments made for collection purposes only. Therefore, the singular transaction of the assignment from Fore to Coast for collection purposes is exempt from the provisions of Article 9. However, transactions relating to the creation or perfection of security interests, rather than to assignments of receivables for collection, are not governed by the language of this statute and, therefore, remain subject to the provisions of Article 9, absent other controlling provisions. The transaction between

6

the parties here resulting in the creation of a security interest in the debtor's inventory is the transaction that is pivotal to the Court's decision as to whether there is a perfected security interest covering transportation charges incurred by the debtor. Article 9, therefore, applies to those transactions. The assignment of receivables was admittedly for collection only and not for the purposes of securing any transaction between Fore and Coast. Therefore, whether Article 9 applies to the assignment transaction is essentially irrelevant to a determination regarding whether the underlying claim for transportation charges is secured.

Fore argues, further, that even if the transaction falls within the purview of Article 9 of the Uniform Commercial Code, there is an alternative ground to support the validity of the security interest claimed by Coast in the debtor's finished product securing all material and transportation charges. Fore cites Miss.Code Ann. § 75-9-302(1)(e) which provides that:

> § 75-9-302. When filing is required to perfect security interest; security interests to which filing provisions of this chapter do not apply.
>
> (1) A financing statement must be filed to perfect all security interests except the following:
>
> (e) an assignment of accounts which does not alone or in conjunction with other assignments to the same assignee transfer a significant part of the outstanding accounts of the assignor;

Miss.Code Ann. § 75-9-302(1)(e) (1972). Fore submits that the assignment constituted a nominal amount of the receivables of Fore Trucking.

The parties have stipulated that the assignment here is for collection purposes only. In light of Miss.Code Ann. § 75-9-104, discussed above, which provides that Article 9 does not apply to assignments for collection only, Section 75-9-302(1)(e) appears applicable only to assignments that were not for collection only, since it indicates that Article 9 would control but for the stated exception. Furthermore, under the facts of this case, the issue of perfection is pertinent as it relates to the security interests of either Coast or Fore, rather than to the assignment from Fore Trucking to Coast Materials. Therefore, the Court concludes that Section 75-9-302(1)(e) cited above is not

7

applicable to the circumstances here.[4]

As previously stated, a critical point to the issue placed before the Court for determination is the fact that the assignment was for collection purposes only, and was not a substantive assignment of debt to Coast Materials, assigning ownership and title to the debt owed by Biloxi Prestress to Fore Trucking.[5] Even under the assumption that the language in the agreement between the parties is broad enough to have created for Coast Materials a security interest in the debtor's finished product or inventory for transportation charges, Coast is, nevertheless, only entitled to enforce a security interest to the extent it is owed a debt.[6] As is made clear in the stipulation, the debt for transportation charges is not owed to Coast Materials. It is owed to Fore Trucking. Coast Materials has a valid and perfected security interest, by virtue of supporting documentation and the filed UCC financing statements, on the debt it is owed for materials, to the extent it is secured by value pursuant to 11 U.S.C. § 506(a). Fore Trucking does not have a valid and perfected security interest on the debt it is owed for transportation charges. The assignment of receivables from Fore to Coast was for

---

[4]Fore and Coast have cited *Bramble Transportation, Inc. v. Sam Santer Sales, Inc.,* 294 A.2d 97, 101 (Del.Super.Ct.1971), *aff'd,* 294 A.2d 104 (Del.1972), and *Architectural Woods, Inc. v. State,* 88 Wash.2d 406, 562 P.2d 248 (1977) to support the position that Article 9 is inapplicable to the facts of this case. For reasons cited in this opinion, the arguments made are not pertinent to the integral transaction at issue and analysis of these cases is found to be unnecessary.

[5]The debtor cites several cases in arguing that as assignee can take no greater rights than those held by the assignor. Cases cited include *Vittert Construction and Investment Co. v. Wall Covering Contractors, Inc.,* 473 S.W.2d 799 (Mo.Ct.App.1971); *York v. Ottusch,* 412 F.Supp. 819 (W.D.Wis.1976); *Indiana Lumbermen's Mut. Ins. Co. v. Curtis Mathes Mfg. Co.,* 456 So.2d 750 (Miss.1984); *Smith v. Copiah County,* 232 Miss. 838, 100 So.2d 614 (1958). The debtor's brief also indicates there is an apparent conflict between the ruling in *In re King-Porter Co.,* 446 F.2d 722 (5th Cir.1971) and this general principal. However, determination regarding the application of this general principal is not necessary to the conclusion reached by the Court herein. The thrust of the debtor's argument on this point appears to be that Coast Materials could not obtain, by virtue of assignment, a secured claim that is greater than the unsecured claim of Fore Trucking. However, Fore Trucking has conceded that it does not have a secured claim. Any security held by Coast is held by virtue of its own previously obtained and perfected security interest, and not through any assignment from Fore.

[6]As pointed out by debtor's counsel, an oversecured creditor is only entitled to receive the amount of its claim.

8

collection purposes only.[7]  It did not provide authorization for Coast to collect and keep as it own

the debt owed to Fore, but rather to collect merely as Fore's agent.[8]  The umbrella of Coast Material's

security interest is not broad enough to extend to a debt owed to a separate entity.  The arguments

made by Coast and Fore do not provide sufficient basis or authority upon which the Court could

recast the unsecured claim of Fore as a secured claim of Coast Materials.

In the case of *In re E.A. Fretz Co.,* 565 F.2d 366 (5th Cir.1978), the Fifth Circuit offered the

following comments:

> Republic recognizes that the UCC clearly contemplates and sanctions floating collateral (after-acquired property of the debtor) and floating debt (future advances). However, the UCC does not, according to Republic, contemplate "floating secured parties," that is, an open-ended class of creditors with unsecured and unperfected interests who, after the debtor's bankruptcy can assign their claims to a more senior lienor and magically secure and perfect their interests under an omnibus security agreement and financing statement.  We agree with Republic ...
>
> Surely floating debt and floating collateral provide all the uncertainty any creditor should be required to suffer.  When floating secured parties are wading in the wings, clairvoyance, not mere knowledge, would be essential.  We are unwilling to impose on any junior secured creditor, with knowledge or without, the additional risk that, at a date subsequent to his perfection, any affiliate of the senior creditor or any stranger to it unnamed as secured parties in a security agreement or a financing statement could be metamorphosed into senior secured parties by virtue of an assignment "or otherwise," pre- or post-bankruptcy.  We also decline to impose upon a junior secured creditor the burden of a frequent check to determine whether any unsecured parties have secretly assigned their claims to a senior secured party whose interest has been perfected.

*In re E.A. Fretz Co.,* 565 F.2d 366, 369, 372 (5th Cir.1978).  Additionally, the Court made further

comments as follows:

> Neither the Bankruptcy Judge nor Revlon has explained to our satisfaction precisely

---

[7]The case of *In re King-Porter Co.,* 446 F.2d 722 (5th Cir.1971) was cited in the briefs submitted to the Court.  As pointed out by the debtor, however, that case is not factually analogous because the assignment in *King-Porter* was not an assignment for collection purposes only.

[8]The debtor has argued that Coast Materials has not provided value as required under Miss.Code Ann. § 75-9-203(1) for perfection and attachment of security interests since the assignment to Coast was not a substantive assignment.  As previously stated, it has been stipulated that the assignment was for collection only and discussion of this section is not necessary.  Additionally, since the debtor does not contest the security interest as to debts owed to Coast for materials provided, it is uncontested that Coast provided value for attachment of the security interest as to its own debts.

> how (by abracadabra, sleight of hand, baptism or otherwise?) this perfected secured status arose. Mystical, magical miracles are rare, even in Texas. The naked conclusion that the indebtedness of the Revlon subs was secured by their parents' security interest does not hold water; it simply avoids the real question of how the transmutation could have occurred within the terms of the UCC. Moreover, we know of no Code provision which would sanction perfection of a nonexistent security interest by assignment, pre- or post-bankruptcy.

565 F.2d at 374, n. 23.[9] Moreover, in footnote 22, the Court offered the following, "Clearly the assignments were necessary. Prior to assignment, how could Revlon have had a lien to secure debt not owed directly to it?" 565 F.2d at 374. Under the facts of this case, there was no assignment to Coast Materials transferring to it the debt owed by Biloxi Prestress to Fore Trucking. The assignment made was for collection purposes only.

Based on the foregoing analysis and pursuant to 11 U.S.C. §§ 544 and 1107, the Court concludes that the debtor in possession is entitled to a determination that the debt owed by Biloxi Prestress Concrete, Inc. to W.C. Fore Trucking, Inc. is an unsecured debt.

A judgment will be entered consistent with these findings and conclusions pursuant to Federal Rule of Bankruptcy Procedure 9021 and Federal Rule of Civil Procedure 58. This opinion shall constitute findings and conclusions pursuant to Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52.

This the 7th day of November, 1994.

---

[9]The Court recognizes that the referenced case is not factually analogous as to exact issues. There may be differences with the subject case as to whether the creditor actually had a security interest, although unperfected, and whether an assignment occurred prior to bankruptcy or after bankruptcy, as well as other differences. The comments are cited for the purpose of showing the apparent inclination of the Fifth Circuit not to extend benefits obtained from perfecting security interests by filing in accordance with provisions of the Uniform Commercial Code to unintended parties or claims.